IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| RICKY EMANNUL ANDERSON )<br>)<br>v. )<br>)<br>SOCIAL SECURITY ADMINISTRATION ) | No. 2:15-0016<br>Judge Sharp/Bryant |

To: The Honorable Kevin Sharp, Chief Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under Title II of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 11), to which defendant has responded (Docket Entry No. 13). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 5),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed his application for benefits in August 2011, alleging disability onset as of August 1, 2010 (Tr. 45, 151) due to nerve damage and loss of use of his arms. (Tr.

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

155) His application was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on July 29, 2013, when plaintiff appeared with counsel and gave testimony. (Tr. 62-84) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until September 30, 2013, when he issued a written decision finding plaintiff not disabled. (Tr. 45-55) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2013.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 1, 2010 through his date last insured of March 31, 2013 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: osteoarthritis. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that he can lift, carry, push or pull twenty pounds occasionally and ten pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours and stand and/or walk for six hours; can occasionally climb ladders, ropes and scaffolds; can occasionally crawl; can frequently climb stairs and ramps; can frequently balance, stoop, kneel and crouch; and, can tolerate frequent bilateral handling and fingering.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 10, 1959 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2010, the alleged onset date, through March 31, 2013, the date last insured (20 CFR 404.1520(g)).

(Tr. 47, 49, 53-54)

On January 22, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-4), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is culled from the ALJ's decision:
In a function report prepared in August of 2011, the claimant cited severe arm pain as his

primary impediment. (See Exhibit 5E). He indicated that he continued to care for his dogs, fixed lunch occasionally and mowed, using a riding lawnmower. However, he did little else, remaining reliant on his wife for the fulfillment of most household duties. He cited watching television as his sole pastime and indicated that he shopped regularly at a local country store. Because of problems with his arms and hands, the claimant asserted that he had trouble lifting, reaching and using his hands for tasks. He estimated that he could walk approximately two hundred yards before requiring ten minutes of rest and indicated that he had difficulty sustaining attention and handling stress effectively. The claimant also asserted that he experienced dizziness and drowsiness from use of gabapentin.

In a subsequent function report, the claimant again cited severe arm pain and added that he has also experienced neck and lower back pain that have gotten progressively worse over the past two years. (See Exhibit 9E). He continued to feed his dog and watch television daily. The claimant also acknowledged shopping at a local general store regularly. However, he estimated that his ability to walk had diminished to one hundred yards before requiring a ten-minute rest. He continued to complain of problems with maintaining concentration and attention and indicated further that he has difficulty being around other people.

During his testimony, the claimant indicated that he cannot work because of widespread pain that is especially debilitating in his arms and back. He described a typical day of consisting of feeding his dogs and spending the remainder of his day applying a heating pad. According to the claimant, he is obligated to wear a back brace when he ventures outside his home. He testified that he can no longer mow his grass. The claimant indicated that he performs no household chores and spends all of his time watching television. He can take care of his personal hygiene needs and dress himself independently, but is capable of little else. Although his arm pain has existed for fifteen years, the claimant testified that it has worsened significantly in the past three to four years. Currently, he is in pain twenty-four hours a day and his arm pain is especially unbearable at night. The claimant indicated that his physician told him his arm pain is likely tied to nerve damage, but he is unable to afford testing to confirm this diagnosis. The claimant testified that his arms hurt constantly and this inhibits his abilities to grip items without dropping them. With respect to his back, the claimant testified that this pain radiates into his legs and inhibits his abilities to stand/walk or sit for extended periods. His back pain coupled with his arm pain limits him to lifting less than ten pounds. Any twisting motion exacerbates his pain. According to the claimant, his back

and arm pain disrupt his sleep and cause daytime fatigue and he experiences severe and persistent exacerbation of his pain with any type of exertion.

In terms of the claimant's alleged arm pain, as discussed above, there are no diagnostic test results confirming the existence of an underlying disorder in the claimant's arms. A review of his treatment records reveals that he began complaining sporadically about back, leg and upper extremity pain in 2006. (See Exhibit 1F). He was characterized as having "joint pain," with no motor strength, gait or sensory deficits and as being in no acute distress from 2006 through 2009. His memory and concentration remained intact and x rays of his bilateral shoulders and left elbow remained negative.

Shortly before his alleged onset date, in June of 2010, he continued to cite arm pain without any radiological evidence of abnormalities. He remained in no acute distress and was prescribed Neurontin (800 milligrams) to treat his pain. (See Exhibit 1F). His next treatment of record was in October of 2010, for chest pain, palpitations and near syncope. This apparently was an isolated event. In November of 2010, he again complained of arm pain but his ranges of motion, gait, strength, coordination, sensation and reflexes remained intact. In March of 2011, his treating physician, Dr. Larry Mason, included osteoarthritis of the hands as a diagnosis but did not cite any diagnostic test results confirming this conclusion.

The claimant was referred to Dr. Randy Gaw, a neurologist, in May of 2011. (See Exhibit 2F). The claimant told Dr. Gaw that he has bilateral arm pain, but no neck pain, and he demonstrated no limitation to his ranges of motion and no muscle weakness in his arms. The claimant indicated further that he was not experiencing leg pain or symptoms in his hands. Although he complained that Neurontin was losing its efficacy and Lyrica failed to provide relief, his muscle strength, tone and bulk, reflexes, gait stand, coordination and sensation remained intact. He showed no signs of impingement. Dr. Gaw speculated that the claimant's pain could result from the C7 nerve distribution.

There are only two other medical treatment notes of record, one generated in January of 2012, and the final record, generated in January of 2013. (See Exhibits 13F and 16F). In January of 2012, the claimant continued to complain of bilateral upper extremity pain and pain in multiple other joints. (See Exhibit 13F). Despite his complaints of joint pain, there was no sign of acute synovitis. His condition was characterized as consisting of "episodic flare-ups with symptom free periods in between."

In January of 2013, the claimant indicated that he had been experiencing neck pain for three months with left upper extremity paresthesia. (See Exhibit 16F). Gabapentin was not providing relief for his pain and he had pain with range of motion of his neck. Nevertheless, his gait, station and muscle strength remained intact. A cervical x-ray demonstrated *mild* spondylosis in his cervical spine. This represents the final treatment note of record.

In the interim, in December of 2011, the claimant underwent a consultative examination by Dr. Donita Keown. (See Exhibit 3F). During that encounter, the claimant was observed ambulating briskly through the clinic hallways. His digits flexed and extended fully, he demonstrated no atrophy, no Tinel's sign and his strength in his hands, upper and lower extremities was 5/5. There was no evidence of sensory impairment, his reflexes remained intact and his gait and station were unremarkable with straightaway walk, tandem step, toe lift, heel lift and one-foot stand all normal. Romberg testing was negative. Straight leg raise testing was negative and the claimant's ranges of motion were within normal limits. In short, there was no evidence of any physical limitation.

(Tr. 50-52)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). While this is a deferential standard, it is not a trivial one; a finding of

6

substantial evidence must "take into account whatever in the record fairly detracts from its weight." Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). Nevertheless, the SSA's decision must stand if substantial evidence supports the conclusion reached, even if the record contains substantial evidence that would have supported an opposite conclusion. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
> 2) A claimant who does not have a severe impairment will not be found to be disabled.

7

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520, 416.920. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such

8

cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Citing the familiar standard of deferential consideration due the opinion of a treating physician, see, e.g., 20 C.F.R. § 404.1527(c), plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Mason, his treating physician since 2006. Plaintiff argues that the objective medical evidence supports Dr. Mason's July 2013 assessment of disabling limitations due to cervical and lumbar back pain (Tr. 375-76), noting that "[o]n January 23, 2013, he had pain in the neck with forward flexion and rotation" and that "[d]egenerative changes were noted on x-ray." (Docket Entry No. 12 at 14)[2] However, as the ALJ noted (Tr. 51), when plaintiff reported neck pain in January 2013, he also reported that it had

---

[2]Plaintiff also cites cervical MRI results from January 2014. However, this evidence was not before the ALJ, but was first submitted before the Appeals Council, and so is outside the scope of this Court's review. See, e.g., Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148-49 (6th Cir. 1996).

9

only developed within the prior three months (Tr. 371), and the degenerative changes noted on the cervical x-rays were "[m]ild ... with no acute findings." (Tr. 374) Moreover, plaintiff's hearing testimony does not even identify neck pain as among the causes of his alleged disability, except by affirmation of counsel's summary that he claims to be disabled by his "neck and arm issues and then the back pain doesn't help things at all either." (Tr. 78-79) Instead, plaintiff's testimony focuses on his arm pain and, to a far lesser extent, his lower back pain (Tr. 71-73); indeed, plaintiff's alleged arm pain has always been the fulcrum of his disability claim. (See Tr. 155)

In weighing Dr. Mason's opinion, the ALJ made the following findings:

> Dr. Larry Mason, a treating physician, provided an opinion as well. (See Exhibit 17F). Dr. Mason opined that the claimant is limited to less than the full range of sedentary work with little standing and walking, no postural movements, restrictions from exposure to heights, noise, moving machinery, temperature extremes, pulmonary irritants and vibration. Dr. Mason also opined that the claimant would miss more than four days of work a month. Dr. Mason's opinion is given little or no weight. His treatment notes fail to support the level of disabling limitations he suggests. Despite the claimant's complaint of arm pain, there are no diagnostic test results supporting an underlying nerve issue and no nerve conduction testing of record. Further, there is no support for the limitations to standing and walking that he suggests. Nothing demonstrates problems with the claimant's legs or lower back other than a few isolated subjective complaints of low back pain. Similarly, most of Dr. Mason's suggested environmental limitations remain unexplained by any of the claimant's subjective complaints or disorders. There are no allegations of hearing problems to explain noise limitations and no indication of breathing problems that would warrant limitations from exposure to pulmonary irritants and humidity. Finally, a review of the claimant's records reveals that, Mr. William Fryer, a nurse practitioner working for Dr. Mason, treated the claimant on most occasions during the relevant period. The only exception is the January of 2013 treatment note, which reflects treatment by Dr. James Tompkins. Given the infrequency of treatment and Dr. Mason's lack of personal contact with the claimant during

10

the period in question, the basis of his overly restrictive estimates remains unclear.

(Tr. 53) It is clear that the ALJ gave good reasons for assigning little to no weight to the opinion of Dr. Mason, based on the record evidence. This fulfilled his duty imposed by the regulations where, as here, a treating source's opinion which conflicts with other substantial evidence is given less than controlling weight. See 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The undersigned finds no error here.

Plaintiff's second and final argument is that the ALJ erred in discounting the credibility of his subjective pain complaints. The ALJ properly recognized the standard for evaluating such complaints:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

(Tr. 50). Accord 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247-48 (6th Cir. 2007). The ALJ proceeded to give a full recitation of plaintiff's alleged pain and resulting limitations. (Tr. 50) After determining that plaintiff's osteoarthritis could reasonably be presumed to be the cause of plaintiff's pain, the ALJ next described the limited record of plaintiff's medical treatment,

which is notable for the absence of any diagnostic test results confirming the source of plaintiff's pain, or any other clinical signs which would confirm the presence of enduring, severe pain, such as motor, reflex or sensory loss, loss of muscle strength, loss of range of motion, muscle atrophy, or gait abnormality. (Tr. 51-52) The ALJ concluded his credibility determination with the following findings:

> I do not find the claimant's characterization of his arm pain to be fully credible for several reasons. The record reflects just six medical treatment visits (one of which did not concern the conditions at issue in this claim) during the relevant period, including just one in 2012, a single visit in 2013 and no treatment since January of 2013. It is difficult to endorse his account of his severe physical problems in light of the infrequency of his medical treatment. Further, his prescription for Neurontin has remained the same throughout the relevant period and treatment records fail to reflect complaints about side effects that the claimant alleged in connection with this claim. The details from physical examinations and the results of diagnostic testing also fail to support the level of debilitating musculoskeletal problems that he alleges.
>
> Further, I note that the claimant has only worked sporadically and has only worked at substantial gainful activity levels in four years, in 1998 and from 2003 to 2005. This signifies weak employment motivation and in turn weakens his contentions that, but for his medically determinable impairments, he would be working. (See Application and Exhibit 4D).
>
> However, in light of the claimant's persistent complaint of arm pain, presumably tied to arthritis, I find that limiting the claimant to light exertion is warranted. There is no evidence supporting limitations to his low back or lower extremities, such that his abilities to stand and ambulate would be affected. His ongoing bilateral arm pain limits his ability to handle and finger items more than frequently, as well as his abilities to climb ladders, ropes or scaffold or crawl more than occasionally and climb ramps or stairs, balance, stoop, kneel or crouch more than frequently. The evidence does not support the intensity or severity of problems that the claimant alleges.

(Tr. 52) This is an entirely sufficient explanation of the ALJ's rationale for discounting the

credibility of plaintiff's pain complaints, despite his consistent complaints of arm pain. An ALJ's finding on the claimant's credibility is due considerable deference on judicial review, Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), and the undersigned finds no reason to disturb the credibility finding in this case.

In sum, the decision of the ALJ is supported by substantial evidence on the record as a whole. That decision should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 10th day of August, 2016.

                                         s/ John S. Bryant
                                         JOHN S. BRYANT
                                         UNITED STATES MAGISTRATE JUDGE